IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RANDY DAUGHENBAUGH, | |
| Plaintiff, | Docket No. 2:25-cv-00153 |
| vs. | The Honorable W. Scott Hardy |
| PPG INDUSTRIES, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

## AMENDED COMPLAINT

Plaintiff, Randy Daughenbaugh, by and through his attorneys, Obermayer Rebmann Maxwell & Hippel LLP, files this Amended Complaint and states as follows:

1. Defendant PPG Industries, Inc. fired Mr. Daughenbaugh based on his age and retaliated against him for complaining about age discrimination, in violation of, the Age Discrimination in Employment Act and the Pennsylvania Human Relations Act. 29 U.S.C. § 623 and 43 P.S. § 951 and for the purpose of interfering with his ability to claim retirement benefits in violation of ERISA § 510. The company also fired him based on his race in violation of 42 U.S.C. §§ 1981, *et seq*. He seeks damages, equitable remedies, declaratory relief, attorney fees, and litigation costs.

## JURISDICTION AND VENUE

2. Jurisdiction is proper over each of Daughenbaugh's claims arising under the laws of the United States under 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction over each of Daughenbaugh's state law claims under 28 U.S.C. § 1367.

1

4. The federal and state law claims alleged herein arose from a common nucleus of operative fact.

5. The state claims alleged herein are so related to the federal claims that they form part of the same case or controversy such that the actions would ordinarily be expected to be tried in one judicial proceeding.

6. A substantial part of the actions, events, and omissions upon which Plaintiff's claims are based occurred within Allegheny County, Pennsylvania.

7. The Western District of Pennsylvania is the proper venue in which these claims should be litigated.

8. Plaintiff filed a Charge of Discrimination with the EEOC on October 18, 2023 (cross filed with the PHRC) and received a Notice of Right to Sue on January 6, 2025.

## PARTIES

9. Daughenbaugh was fifty-three years old at the time Defendant PPG Industries, Inc. ("PPG") fired him.

10. At all times relevant, Daughenbaugh resided in Allegheny County, Pennsylvania.

11. At all times relevant, Daughenbaugh worked for PPG as a chemist. He was most recently employed at PPG's Allison Park coatings research facility.

12. PPG is a global manufacturer of paints, coatings, and specialty materials headquartered in Pittsburgh, Pennsylvania.

13. In 2023, PPG's domestic workforce exceeded 47,000 employees.

## FACTS

14. Daughenbaugh began his career as a chemist for PPG in June of 1991 shortly after earning his bachelor's degree in chemistry from Penn State University.

4922-7859-4417 v1

15. He was promoted to Senior Chemist in 1995, then Research Chemist in 1998, and Senior Research Chemist in 2003. From 2010 onwards he held the position of "Research Associate II."

16. Daughenbaugh completed a master's degree in colloids, polymers, and surfaces at Carnegie Mellon University in 1999 while working for PPG full-time and attending classes at night.

17. Throughout his 32 years with PPG, Daughenbaugh received uniformly positive annual performance evaluations.

18. Daughenbaugh performed commercially important research for PPG, including work for which PPG received an "R&D100" award in 2021. In the final year and a half of Daughenbaugh's employment with PPG, he was able to justify a $200,000 capital expense for his research and received a group innovation award. His name was also listed as an inventor on a patent application.

19. Over his career with PPG, Daughenbaugh submitted over 30 patents, which put him in the top 1-2% of PPG inventors of all time.

20. However, in 2020, Daughenbaugh's supervisor John Furar told him that he needed to demonstrate "higher levels of technical leadership" and gave him a performance review which evaluated him as only "partially effective".

21. Around the same time of the 2020 performance review, Furar verbally told Daughenbaugh that at his age, he would be targeted if he didn't take on leadership responsibilities.

22. At the same time, Furar paradoxically stated that PPG's Chief Technology Officer wanted all leadership opportunities to go to younger chemists with Ph.Ds.

3

23. While it was commonplace for PPG chemists to have master's degrees when Daughenbaugh started his career with the company, PPG later switched to hiring only chemists with Ph.Ds., and there was a pervasive attitude by management that older chemists like Daughenbaugh who held master's degrees were not "true chemists."

24. In 2022, Daughenbaugh was recommended by Brian Rearick, his supervisor at the time, for a leadership position to which he applied but was not granted an interview.

25. Afterword, Rearick told him that he was not granted the interview because of his age. Daughenbaugh was 52 years old at the time.

26. Instead, PPG hired another younger chemist for the role, Hao Sun, who was in his mid-30's and who later became Daughenbaugh's supervisor.

27. Feeling that this was unfair, Daughenbaugh reported age discrimination to PPG's Ethics Hotline in early-2022. PPG responded that it could not corroborate his story.

28. Following his Ethics Report, PPG assigned him fewer and fewer projects and continually denied him opportunities to present his work. And his young Manager Hao Sun then began to avoid taking meetings with him by cancelling them.

29. After PPG denied Daughenbaugh an opportunity to prepare a white paper on precision application technology, he approached Rearick to question why he was being denied such opportunities. Rearick responded, "I'm only doing what I'm told," implying that someone at a higher level within the organization directed him to deprive Daughenbaugh of such opportunities.

30. When Sun became Daughenbaugh's supervisor in 2022, Sun was initially positive about his work and told him that he appreciated his honesty and job performance.

4

31. In February 2023, however, when Sun completed his first written evaluation of Daughenbaugh, he contradicted what he had previously said to him, rating him as only "partially effective" and stating, "Randy hasn't demonstrated leadership skills, technical depth, and interpersonal effectiveness expected for a research associate." This was the first time during his career with PPG that any supervisor had suggested that he lacked the requisite technical skills for his job.

32. Following this review, Sun unaccountably placed Daughenbaugh on a performance improvement plan, "PIP", and advised him that PPG would fire him if he could not meet expectations identified in the PIP.

33. The focal point of Daughenbaugh's PIP was to complete a research project on the use of Dynamic Surface Tension to bring value to PPG's Playbook Projects, and to deliver a presentation on his research. After receiving the PIP, Daughenbaugh immediately commenced work the project.

34. Daughenbaugh provided his research project findings to Sun two weeks ahead of his scheduled presentation date as requested in his PIP. Sun did not give Daughenbaugh any feedback or suggestions to improve any aspect of his work.

35. Furthermore, the PIP required Sun to hold weekly check-in meetings with Daughenbaugh. During these meetings, Sun had no constructive feedback for Daughenbaugh, instead merely conveying his appreciation with Daughenbaugh's honesty and efforts.

36. In late-April 2023, Daughenbaugh presented his findings to a group including Sun, his next-level supervisor Rebecca Steiger, engineers from other divisions, and managers who had no apparent association with the project.

37. The tone of the meeting was not collegial as was common at similar meetings between PPG scientists. Instead Daughenbaugh was "put on the spot" and grilled on a series of questions that were not focused on advancing the technology or the subject of the research. The questions instead seemed designed to question Daughenbaugh's general knowledge and put him on the defensive.

38. A younger scientist working with Daughenbaugh commented that the presentation felt like making a graduate student or Ph.D. candidate present a thesis, to the point that they felt uncomfortable and embarrassed for him.

39. At the time of his presentation, Sun and Steiger both gave Daughenbaugh positive oral feedback, telling him that it was the most comprehensive review of the topic at PPG to-date.

40. Sun and Steiger's written assessments of his presentation, however, were decidedly negative.

41. Sun and Steiger did not ask all attendees to complete written critiques of Daughenbaugh's presentation. Instead, they solicited written feedback only from participants they could trust to carry-out their objective to justify Daughenbaugh's firing.

42. PPG fired Daughenbaugh on May 1, 2023.

43. Prior to placing Daughenbaugh on the PIP and ultimately firing him, PPG laid off thirteen people from the Allison Park facility in fall of 2021, eleven of whom were over the age of fifty.

44. Upon information and belief, PPG reallocated Daughenbaugh's work to younger employees.

4922-7859-4417 v1

**Race Discrimination**

45. Throughout his employment, Defendant also demonstrated a pattern of preferential treatment toward Asian employees, particularly Chinese nationals, while denying similar opportunities to White employees like Daughenbaugh.

46. In 2022-2023, Defendant selected Daughenbaugh to give a televised presentation and demonstration in the applications area – a significant professional opportunity for visibility and career advancement.

47. Shortly before the presentation, Hao Sun called Daughenbaugh into his office and explicitly told him that he was being removed from the presentation because of his race, stating, "I'm really embarrassed to say this to you, but they don't want you to present because you're white."

48. When Daughenbaugh asked if Sun was serious, Sun confirmed and explained, "there's too many white people already presenting, we need Chinese to present."

49. Defendant then replaced Daughenbaugh with either Hao Sun or Chao Wang, both of whom are Chinese, for this high-visibility presentation opportunity.

50. This race-based denial of opportunity directly impacted Daughenbaugh's ability to demonstrate his technical leadership and presentation skills – the very competencies Defendant later claimed he lacked when justifying his termination.

51. Defendant's hiring and promotion practices demonstrated a clear preference for Chinese Ph.D.s over similarly qualified White employees.

52. The intersection of Daughenbaugh's race and age made him particularly vulnerable to Defendant's discriminatory practices, as the company systematically promoted

7

young Chinese Ph.D.s into management positions while denying similar advancement opportunities to older White employees.

## CLAIMS FOR RELIEF

### COUNT I

### Age Discrimination – Disparate Treatment - ADEA

53. Plaintiff incorporates by reference the foregoing paragraphs as if set forth fully herein.

54. Defendant PPG, by its actions and omissions as pled in this Complaint, violated the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. § 623.

55. Daughenbaugh is a member of the ADEA's protected class, as he was over 40 years old at the time PPG fired him.

56. Daughenbaugh was well-qualified to hold his job with PPG.

57. Daughenbaugh suffered an adverse employment action when PPG fired him.

58. PPG fired Daughenbaugh because of his age.

### COUNT II

### Age Discrimination – Disparate Treatment - PHRA

59. Plaintiff incorporates by reference the foregoing paragraphs as if set forth fully herein.

60. Defendant PPG, by its actions and omissions as pled in this Complaint, violated the Pennsylvania Human Relations Act ("PHRA") under 43 P.S. § 951, et seq.

61. Daughenbaugh is a member of the PHRA's protected class as he was over 40 years old at the time PPG fired him.

62. Daughenbaugh was qualified to hold his job with PPG.

8

63. Daughenbaugh suffered an adverse employment action when PPG fired him.

64. PPG fired Daughenbaugh because of his age.

## COUNT III

### Retaliation - ADEA

65. Plaintiff incorporates by reference the foregoing paragraphs as if set forth fully herein.

66. As set forth above, Daughenbaugh engaged in protected activity by reporting age discrimination to PPG.

67. Rather than protecting Daughenbaugh from retaliation, PPG engaged in materially adverse actions by allowing his superiors to retaliate against him by excluding him from meetings and assignments, placing him on a PIP, negatively critiquing his presentation and eventually firing him.

## COUNT IV

### Retaliation - PHRA

68. Plaintiff incorporates by reference the foregoing paragraphs as if set forth fully herein.

69. As set forth above, Daughenbaugh engaged in protected activity by reporting age discrimination to PPG.

70. Rather than protecting Daughenbaugh from retaliation, PPG engaged in multiple materially adverse actions by allowing his superiors to retaliate against him by excluding him from meetings and assignments, placing him on a PIP, negatively critiquing his presentation and eventually firing him.

4922-7859-4417 v1

## COUNT V

### Interference with Benefits - ERISA § 510

71.Plaintiff incorporates by reference the foregoing paragraphs as if set forth fully herein.

72.Under the PPG benefits programs applicable to Daughenbaugh, he needed to complete thirty-five years of service in order to receive retiree medical benefits (health care for life under PPG's self-insured plan) and a full defined-benefit pension.

73.Daughenbaugh worked for PPG for thirty-one years and eleven months.

74.PPG was aware that Daughenbaugh would become eligible for the above costly benefits in just over three years, and that it would become harder to terminate him as his eligibility date approached.

75.Indeed, these benefits are so costly that PPG long-ago stopped offering them to newly-hired employees.

76.PPG fired Daughenbaugh purpose of interfering with his right to collect these benefits.

## COUNT VI

### Violation of 42 U.S.C. § 1981

77.Plaintiff incorporates by reference the foregoing paragraphs as if set forth fully herein.

78.Under 42 U.S.C. § 1981, Defendant PPG was prohibited from taking adverse employment action against Daughenbaugh because of his race.

79.In violation of its obligation under 42 U.S.C. § 1981, Defendant terminated Daughenbaugh's employment because of his race.

4922-7859-4417 v1

80. Defendant discriminated against Daughenbaugh by treating him differently than similarly situated non-White employees who engaged in similar or worse misconduct for which his employment was allegedly terminated.

81. Defendant's violation of Section 1981 was willful.

82. As a result of Defendant's willful violation of Section 1981, Daughenbaugh suffered and will continue to suffer both economic and non-economic damages.

83. Daughenbaugh suffered damages due to this intentional discrimination.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

a. Reinstatement;

b. Back pay from May 1, 2023, to date of judgment;

c. Front pay from date of judgment to a reasonable date in the future to compensate Daughenbaugh for his lost earnings;

d. An amount equal to back pay for liquidated damages;

e. Compensatory and special damages for, including but not limited to, pain, suffering, inconvenience, mental anguish, emotional distress, loss of enjoyment of life, reputational damage, and other losses resulting from Defendant's above-described wrongful conduct towards Daughenbaugh;

f. Punitive damages;

g. Pre and post-judgment interest;

h. Reasonable attorney's fees and costs;

i. Declaratory and injunctive relief; and

j. Any and all other relief that the Court deems just and proper.

4922-7859-4417 v1

|  |  |
|---|---|
|  | Respectfully submitted: |
| Dated: October 14, 2025 | */s/Andrew J. Horowitz, Esquire* <br> Bruce C. Fox, Esquire <br> Pa. ID 42576 <br> *bruce.fox@obermayer.com* <br> Andrew J. Horowitz, Esquire <br> Pa. ID 311949 <br> *andrew.horowitz@obermayer.com* <br> OBERMAYER REBMANN MAXWELL & HIPPEL LLP <br> 525 William Penn Place, Ste. 1710 <br> Pittsburgh, PA 15219 <br> 412-566-1500 <br> 412-281-1530 (f) <br><br> *Attorneys for Plaintiff* |

4922-7859-4417 v1

## VERIFICATION

I, Randy Daughenbaugh, hereby certify subject to the penalties of perjury that the averments of facts contained in the within the First Amended Complaint are true and correct to the best of my knowledge, information, and belief.

Dated: 10-14-25

_____
RANDY DAUGHENBAUGH

4922-7859-4417 v1